UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SELLAM ISMAIL and MARIA ISMAIL, pro se,<br><br>Petitioners,<br><br>vs.<br><br>UNITED STATES OF AMERICA and ALMA QUINTERO, Revenue Agent,<br><br>Respondents. | Case No:  C 10-80102-MISC SBA<br><br>**ORDER DENYING PETITION TO QUASH THIRD PARTY SUMMONS**<br><br>[Docket No. 1] |

The parties are presently before the Court on Petitioners Sellam and Maria Ismail's Petition to Quash Third Party Summons.  (Docket 1.)  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the motion for the reasons set forth below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b).

**I.      BACKGROUND**

On April 12, 2010, Agent Alma Quintero of the Internal Revenue Service ("IRS") issued a third party summons to Wachovia Mortgage to obtain information regarding Petitioners.[1]  (Pet. to Quash Third Party Summons at 2, Docket 1; Quintero Decl. ¶ 1, Docket 6.)  Specifically, the summons seeks information to ascertain Petitioners' potential tax liabilities, to facilitate collection of any taxes owed, and/or to inquire into offenses connected with the administration and enforcement of the internal revenue tax laws.  (Quintero Decl. ¶ 3.)  The summons seeks all financial statements for which either of the Petitioners' names appeared on the account or for which either individual was an

---

[1] Wachovia Mortgage was formerly known as World Savings.  (Mem. Opp. to Pet. to Quash IRS Summons at 1, Docket 5.)

1  authorized signatory on an account.  (Pet. to Quash at 2.)  The summons also seeks
2  signature cards, deposit slips or items, cancelled checks, copies of payments received by the
3  Petitioners, mortgage and loan documents, and any other financial statements related to
4  credit worthiness submitted by either Petitioner.  (Id. at 2-3.)
5      A copy of the summons was mailed to Petitioners.  (Pet. to Quash at 2.)  Agent
6  Quintero incorrectly dated the Petitioners' notice "July 2, 2009," instead of "April 12,
7  2010."  (Id. at 4.); Mem. Opp. to Pet. to Quash at 4.)  In response to the summons and
8  notice, on May 3, 2010, the Petitioners filed the instant Petition to Quash Third Party
9  Summons.  The Government opposes the motion.

10 **II.   LEGAL STANDARD**
11      Section 7602(a) of the Internal Revenue Code authorizes the Secretary of Treasury
12 to issue summonses to examine and inspect the books and records of any individual in
13 order to ascertain and collect on potential tax liabilities.  26 U.S.C. § 7602(a)(1).  Section
14 7609 sets forth specific procedures for a third-party summons, and provides that any person
15 entitled to notice of the third-party summons has the right to bring proceedings to quash the
16 summons.  Id. § 7609(b), (h)(1) (district court has jurisdiction over a petition to quash
17 summons if brought by an individual entitled to notice).[2]  Since a petition to quash an IRS
18 summons invokes the process of this Court, the Court may quash the summons if it
19 constitutes an abuse of process.  Strough v. United States, 326 F. Supp. 2d 1118, 1120
20 (C.D. Cal. 2003).
21      To defeat a petition to quash summons, the IRS must make a prima facie showing
22 pursuant to United States v. Powell, 379 U.S. 48, 57-58 (1964), which applies when the
23 Government seeks to oppose a petition to quash summons or to enforce a summons.
24 Crystal v. U.S., 172 F.3d 1141, 1143-44 (9th Cir. 1999).  Under Powell, the Government
25
26      [2] An IRS summons is "administratively issued but its enforcement is only by federal court authority in an adversary proceeding affording the opportunity for challenge." United
27 States v. Church of Scientology of California, 520 F.2d 818, 821 (9th Cir. 1975).  The Code authorizes the IRS to request a federal district court to enforce a third-party summons in a
28 proceeding to quash the summons.  Id. § 7609(b)(2)(A).

must show: (1) that the investigation will be conducted pursuant to a legitimate purpose; (2) that the inquiry may be relevant to the purpose; (3) that the information sought is not already within the Commissioner's possession; and (4) that the administrative steps required by the Code have been followed. Id. "The government's burden is a slight one, and may be satisfied by a declaration from the investigating agent that the Powell requirements have been met." United States v. Dynavac, Inc., 6 F.3d 1407, 1414 (9th Cir. 1993).

Once the Government establishes a prima facie case, the burden shifts to the petitioner to negate one of the four Powell elements or demonstrate a lack of good faith on the part of the Government. Id. at 1414; United States v. LaSalle Nat. Bank, 437 U.S. 298, 318 (1978). "The taxpayer … carries a heavy burden." United States v. Stuckey, 646 F.2d 1369, 1372 (9th Cir. 1981). "The taxpayer must allege specific facts and evidence to support his allegations." Liberty Fin. Servs. v. United States, 778 F.2d 1390, 1393 (9th Cir. 1985). "If no substantial challenge to the validity of the summons is made in a sworn affidavit or declaration alleging specific facts, the matter should be decided on the pleadings before the district court with no further proceedings." Strough v. United States, 326 F. Supp. 2d 1118, 1121 (C.D. Cal. 2003) (citing Liberty Fin. Servs., 778 F.2d at 1392-93).

### III.   DISCUSSION

#### A.   LEGITIMATE PURPOSE

The first Powell element requires the Government to demonstrate that the investigation is being conducted for a legitimate purpose. 379 U.S. at 57. According to the Government, the purpose of the summons is to "ascertain whether or not Petitioners failed to report taxable income." (Quintero Decl. ¶ 3.) This is a legitimate purpose for an IRS summons. See Nelson v. United States, 1994 WL 519485, at *6 (N.D. Cal. Sept. 19, 1994) ("Respondents issued the summons to ascertain whether petitioners' tax returns correctly reflected their income. This is a legitimate purpose.") (Smith, J.). Additionally, the Government states it has issued the summons to determine "whether there was tax liability

1 or offenses connected with the administration and enforcement of the internal revenue laws
2 in regards to any unreported taxable income.  (Mem. Opp. to Pet. to Quash at 3.)  This also
3 is sufficient to show a legitimate purpose.  See Wild v. United States, 362 F.2d 206, 209
4 (9th Cir. 1966)  ("If . . . the objective of the investigation is to obtain information which
5 may be utilized in determining whether there is civil liability for a tax . . . then the
6 summons may be enforced").  Thus, the Court finds that the Government has articulated a
7 legitimate purpose in seeking to determine whether the Petitioners failed to report taxable
8 income.
9    Having met its initial burden, the burden shifts to the Petitioners to prove an
10 improper purpose.  See Dynavac, 6 F.3d at 1414.  Here, Petitioners contend that Agent
11 Quintero had "no 'legitimate purpose' in issuing the summons."  (Pet. Mem. to Quash at 3.)
12 In particular, they argue that the purpose of the summons is illegitimate because mortgage
13 records and signature cards do not, by themselves, establish a violation of IRS laws.  (Id.)
14 This argument misses the point.  The salient issue is whether the Government has
15 articulated a legitimate purpose underlying the summons.  As such, whether or not the
16 summons seeks documents that are sufficient to establish a tax liability goes to the issue of
17 *relevance*, not whether the summons is for a *legitimate purpose*.  Because the Petitioners
18 have not otherwise provided any reasoning or authority to refute the Government's showing
19 that it has a legitimate purpose, the Court finds that the Petitioners have failed show that the
20 summons is for an improper purpose.
21    **B.    RELEVANCE**
22    The second prong under Powell requires the inquiry to be *relevant* to the legitimate
23 purpose.  379 U.S. at 57.  "The IRS' power to examine records in connection with tax
24 investigations is broadly construed."  United States v. Zolin, 809 F.2d 1411, 1414 (9th Cir.
25 1987), aff'd in part and vac'd in part on other grounds, 109 S.Ct. 2618 (1989).  "The
26 Government's burden, while not great, is also not non-existent."  United States v. Goldman,
27 637 F.2d 664, 667 (9th Cir. 1980).  If the records "might throw light" on the accuracy of the
28 returns, then they are relevant.  Zolin, 809 F.2d at 1414.

The Government contends that the financial records sought by the summons "are relevant to and can reasonably be expected to assist in inquiry regarding the tax obligations" of the Petitioners.  (Quintero Decl. ¶ 6.)  In response, the Petitioners assert that the records are not relevant to the purpose of the investigation.  (Pet. Mem. to Quash at 3.)  They contend that "taking out a mortgage and creating signature cards or making payments towards that mortgage" does not amount to any internal revenue violation.  (Id.)  This argument is without merit.  It is well settled that financial and mortgage records are relevant to determine an individual's taxable income, and consequently, the individual's tax liability.  As such, the financial and mortgage records being sought are clearly relevant to determine whether income went unreported.  See English v. Krubsack, 371 F.Supp.2d 1198, 1202 (E.D. Cal. 2005) (finding that that summoned financial records related to taxpayer's financial activity and were relevant and necessary to determine taxpayer's income tax liabilities); Dallas v. United States I.R.S., 2006 WL 4510700, at *1 (S.D. Fla. Nov. 17, 2006) ("The information sought by the subject summons, the mortgage application and the check, was clearly relevant to determining the petitioner's financial status and tax liabilities."); see also Personett v. I.R.S., 2009 WL 3417863, at *6 (D. Colo. Sept. 3, 2009) (finding the relevance requirement satisfied because financial records are certain to aid in examining income tax liability).

The Petitioners also contend that the summons was issued in bad faith with the purpose to harass and intimidate and that the records sought could not possibly give rise to a realistic expectation of relevant information.  (Pet. Mem. to Quash at 3.)  However, the Petitioners' bad faith argument is predicated on the argument that the summons seeks irrelevant information.  Having found no merit to that contention, the Court also finds that the Ishmails have not shown that the Government has acted in bad faith.

C. **POSSESSION OF INFORMATION**

The third Powell requirement is that the "information sought is not already within the Commissioner's possession."  379 U.S. at 57-58.  Agent Quintero states in her declaration that the IRS "does not otherwise have access, possession or control," over the

financial records.  (Quintero Decl. ¶ 2.)  This statement is sufficient to satisfy the Government's burden.  See Dynavac, 6 F.3d at 1414 ("The government's burden … may be satisfied by a declaration from the investigating agent that the Powell requirements have been met.").

The Petitioners argue, without factual or legal support, that the "IRS already possesses all relevant information to determine whether Mr. and Mrs. Ismail may be liable under any internal revenue statute."  (Pet. to Quash at 4.)  They further assert that "the data summoned is incapable of adding any new information which could affect the determination of any potential liability."  (Id.)  However, the Petitioners are not, in fact, arguing that the IRS possesses the records; rather, they merely are claiming, as before, that the records are not relevant.  Since, the Petitioners have failed to contravene Agent Quintero's statement regarding possession of the information being sought, the third Powell element is satisfied.

### D.   COMPLIANCE WITH ADMINISTRATIVE STEPS

The final Powell element requires the Government to show that it has followed the IRC's administrative steps.  379 U.S. at 58.  Petitioners' only argument on this issue is that the summons is invalid because the date recorded on the notice is incorrect.  (Pet. to Quash at 4.)  The Government acknowledges that the notice was incorrectly dated July 2, 2009, when it should have been dated April 12, 2010.  (Mem. Opp. to Pet. to Quash at 4.)  However, despite this clerical error, the Government contends it does not render the summons invalid because the Petitioners "suffered no detriment."  (Id. at 5.)  The Court agrees.

Though the Ninth Circuit has not yet reached this issue, circuit courts have held that an error in the administrative process does not per se invalidate the summons.  See United States v. Gilbert C. Swanson Found., Inc., 772 F.2d 440, 441 (8th Cir. 1985) ("[W]e believe denial of the summons would be an elevation of form over substance"); Adamowicz v. United States, 531 F.3d 151, 161 (2d Cir. 2008) ("[W]e adopt the rule that whether the government' violation of the IRC or an IRS regulation in connection with the issuance of a

summons affects the enforceability of that summons depends upon the totality of the circumstances, including the seriousness of the infringement, the harm or prejudice, if any, caused thereby, and the government's good faith"); <u>Cook v. United States</u>, 104 F.3d 886, 889 (6th Cir. 1997) (employing a harmless error type analysis to conclude that a one-day-late notice did not warrant quashing the summons); <u>Sylvestre v. United States</u>, 978 F.2d 25, 28 (1st Cir. 1992) (holding untimely notice was not a basis for quashing the summons where [the taxpayer] was not harmed by the late notice) (per curiam); <u>United States v. Bank of Moulton</u>, 614 F.2d 1063, 1066 (5th Cir. 1980) ("We, too, decline to elevate form over substance and reject the suggestion that every infringement of a requirement of the [IRC] absolutely precludes enforcement of an IRS summons").

Federal district courts within the Ninth Circuit are in accord. See <u>Simmons v. United States</u>, 1994 WL 16193779 (E.D. Cal. Dec. 2, 1994) (denying petitioner's motion to quash summons despite that Agent Weaver misdated the face of the summons since the summons was issued and served); <u>Vincent v. United States</u>, 1984 WL 3116, at *3 (E.D. Cal. Nov. 15, 1984) (denying motion to quash summons despite the technical violation of Section 2609(d)); <u>Int'l. Bus. Enters. v. United States</u>, 1995 WL 381626, at *3 (S.D. Cal. Mar. 30, 1995) ("[T]he sufficiency of notice should be analyzed by evaluating the good faith of the IRS agent and by analyzing whether there is injury to the taxpayer."); <u>Fin. Sec. Corp. v. United States</u>, 1984 WL 3127, at *2 (N.D. Cal. Dec. 6, 1984) (holding that despite the disputed technical sufficiency of the notice, petitioners were not prejudiced and thus the matter should be resolved on the merits) (Patel, J.).

Finally, the Petitioners have not shown any prejudice resulting from the Government's clerical error. Generally, a taxpayer may bring an action to quash a third-party summons within twenty days of receiving notice thereof. 26 U.S.C. § 7609(b)(2)(B). Based on a notice date of April 12, 2010, the twentieth day expired on Sunday, May 2, 2010. Although Petitioners filed their motion on May 3, 2010, their motion is nonetheless timely. The IRC states that "[w]hen the last day prescribed under authority of the internal revenue laws for performing any act falls on Saturday, Sunday, or a legal holiday, the

performance of such act shall be considered timely if it is performed on the next succeeding day which is not a Saturday, Sunday, or a legal holiday." 26 U.S.C. § 7503.  Since May 2, 2010 was a Sunday, Petitioners had until May 3, 2010 to file their motion.[3]  Thus, despite the typographical error, the Petitioners were not prejudiced, as their petition was timely filed.  The Court finds that the Government has satisfied Powell's fourth element and the Petitioners have failed to carry their burden of showing that administrative procedures were not followed.

## IV.     CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Petitioners' Petition to Quash Third Party Summons is DENIED.  This order terminates Docket 1.

IT IS SO ORDERED.

Dated:  September 2, 2010

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

---

[3] The Court takes judicial notice of the 2010 calendar.  See Zhou v. Wang's Restaurant, 2007 WL 134441, at 3 (N.D. Cal. January 16, 2007) (taking judicial notice of the 2004 calendar) (Trumbull, M.J.).

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

SELLAM ISMAIL, ET AL. et al,

      Plaintiff,

  v.

UNITED STATES OF AMERICA, ET AL. et al,

      Defendant.
                               /

Case Number: CV10-80102 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 8, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Maria Ismail
1213 Jessica Drive
Livermore, CA 94550

Sellam Ismail
1213 Jessica Drive
Livermore, CA 94550

Dated: September 8, 2010

                                    Richard W. Wieking, Clerk

                                               By: LISA R CLARK, Deputy Clerk